IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLIAM C. KOCH,                                        CV. 08-609-PK

       Plaintiff,                                       FINDINGS AND
                                                        RECOMMENDATION

v.

COMMISSIONER of Social
Security,

       Defendant.
_____

PAPAK, Magistrate Judge:

      Plaintiff William Koch challenges the Commissioner's decision denying his application

for disability insurance benefits under Title II of the Social Security Act.  The court has

jurisdiction under 42 U.S.C. § 405(g).  The  court should reverse the Commissioner's decision

and remand for an award of benefits, for the reasons set forth below.

**BACKGROUND**

      William Koch was born in 1961.  (Tr. 26.)  He attended special education classes and

graduated from high school in 1981.  *Id.* at 67-68.  Koch was in an auto accident in 2001, which

led him to seek chiropractic treatment for low back pain. *Id*. at 145-146.

Koch worked until May 30, 2003, when he was fired from his job as a home attendant because he was not performing his duties as necessary. *Id* at. 63, 477. He received unemployment benefits for a year following his termination. *Id*. at 481. Before that job, he worked as a dishwasher until he was let go over a conflict with his manager. *Id*. at 478. He also has prior work experience as a fast food worker, a nurse assistant, a janitor and a window washer. *Id*. at 254-258.

Koch filed his application for disability benefits in April 2004, alleging May 30, 2003 as his onset date. *Id*. at 58. After the Commissioner of Social Security denied his application initially and upon reconsideration, Koch requested a hearing before an administrative law judge (ALJ). *Id*. at 37. The ALJ, Zane Lang, held a hearing in July 2005 and took testimony from Koch, who was not represented by an attorney, and from a vocational expert. *Id*. at 15. In August, 2005, the ALJ issued a decision finding Koch not disabled because he could perform his past relevant work as a home attendant. *Id*. at 18.

After the Appeals Council denied review of the ALJ's decision, Koch appealed to federal court. The U.S. District Court remanded the case for further administrative proceedings based on the stipulation of the parties. *Id*. at 293, 532. Upon remand, the ALJ was required to update Koch's medical evidence, obtain a consultive examination regarding his educational abilities, discuss and evaluate his subjective complaints as well as the lay witness testimony and reassess Koch's residual functional capacity. *Id*. at 294, 532.

The remand hearing took place before ALJ Catherine Lazuran in September 2007. Id. at 279. In April 2008, the ALJ issued a decision finding Koch not disabled because he could

Page 2 FINDINGS AND RECOMMENDATION

perform the requirements of representative occupations, such as price marker or mail sorter, which exist in significant numbers in the national economy. *Id.* at 290. The ALJ applied the five-step sequential disability determination process set forth in 20 C.F.R. § 404.1520. *Id.* at 280-281. At step one, the ALJ found that Koch had not engaged in substantial gainful activity since May 30, 2003. *Id.* at 281. At step two, the ALJ found Koch had the following combination of severe impairments: degenerative disc disease of the lumbar spine, a leg length discrepancy, a history of asthma, borderline intellectual functioning and irritable bowel syndrome. *Id.* at 281. At step three, the ALJ found that Koch's impairments, or a combination of those impairments, did not meet or medically equal a listed impairment. *Id.* at 282. At step four, the ALJ found that Koch was not able to perform his past relevant work. *Id.* at 289. The ALJ concluded at step five, however, that Koch could perform other jobs that exist in significant numbers, and accordingly concluded that he was not disabled. *Id.* at 289-290. Koch filed this appeal.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Vasquez v. Astrue*, 547 F.3d 1101, 1104 (9th Cir. 2008) (citation omitted). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). If evidence supports more than one rational

interpretation, the court upholds the Commissioner's decision. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038 (citation omitted).

## DISCUSSION

Koch contends the ALJ erred in several respects. Koch argues that the ALJ improperly discounted the opinions of treating and examining physicians. He also asserts that the ALJ improperly rejected the testimony of several lay witnesses and his own testimony regarding the severity of his symptoms. Koch also argues that the ALJ erred when she found that his borderline intellectual functioning does not meet or equal a listed impairment. Moreover, he asserts that the ALJ's residual functional capacity (RFC) determination failed to incorporate all of his limitations. Finally, Koch argues that the ALJ erred at step five because the hypothetical to the vocational expert arose from a defective RFC finding and because the vocational expert departed from the Dictionary of Occupational Titles without explanation.

## I.    Physicians' Opinions

In the face of conflicting medical evidence, the ALJ must determine credibility and resolve the conflict. *Thomas v. Barnhart*, 278 F.3d 947, 956-957 (9th Cir. 2002). "Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships." *Carmickle v. Comm'r Soc. Sec.*

*Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).  An ALJ , however, may reject a treating or examining physician's uncontradicted medical opinion based on "clear and convincing reasons" supported by substantial evidence in the record.  *Id*. (citation omitted).  If other evidence in the record contradicts the opinion, an ALJ may reject the opinion only "by providing specific and legitimate reasons that are supported by substantial evidence."  *Ryan v. Comm'r Soc. Sec. Admin.*,528 F.3d 1194, 1198 (9th Cir. 2008) (citations omitted).  Moreover, several factors determine the weight the ALJ should give to a physician opinion, including the length of the treatment relationship and frequency of examination, the amount of evidence that supports the opinion, the consistency of the medical opinion with the record as a whole and the physician's specialty and understanding of the disability program.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)).

###### A.       Limitations Identified by Doctor Ogisu

Doctor Ogisu, an orthopedist, examined Koch in June 2004.  (Tr. 157.)  Ogisu concluded that Koch should be able to sit for six hours in an eight-hour work day and to stand or walk "for at least half the time," although prolonged walking may be limited by asthma.  *Id.* at 159.  He also opined that Koch was "able to handle objects frequently but lack[ed] good dexterity."  *Id.* The ALJ, however, concluded that Koch could stand and walk for six hours in an eight-hour day but required the option to sit or stand.  *Id.* at 283.  In addition, the ALJ rejected Ogisu's finding that Koch had limited hand dexterity.  *Id.* at 284.  Koch argues that the ALJ erred in rejecting Ogisu's opinion on Koch's standing, walking and hand limitations.

Dr. Ogisu's opinion is inconsistent with the opinion of the state agency reviewing physician, who indicated that Koch could stand and walk for six hours in an eight hour day and

had no manipulative limitations. *Id.* at 206, 208. Thus, I review the ALJ's decision to determine whether she set forth legitimate reasons supported by substantial evidence in the record before rejecting Dr. Ogisu's opinion. *See Widmark v. Barnhart*, 454 F.3d 1063, 1066-1067 (9th Cir. 2006) (a nonexamining physician opinion sufficed to establish a conflict among the medical opinions, although it did not by itself constitute substantial evidence to justify the rejection of either an examining physician or a treating physician opinion).

### 1.    Standing and Walking Limitations

Although the ALJ explicitly disagreed with Ogisu's opinion on Koch's standing and walking limitations, her RFC finding does not completely reject that opinion. The ALJ concluded that Koch could stand or walk for six hours, which does not directly conflict with Ogisu's finding that Koch could stand or walk for "at least" four hours. (Tr. 159, 283.) More importantly, ALJ found that Koch required the option to sit or stand, *id.* at 283, and that finding adequately accounts for Koch's standing and walking limitations. *See Cornett v. Massanari*, No. 00-1412, 2001 U.S. Dist. LEXIS 10933, at *35 (D. Or. June 22, 2001) (finding that, if the ALJ credited a physician's opinion that claimant had significant walking limitations, that would not necessarily preclude jobs that had an option to sit or stand). Accordingly, even if the ALJ erred when she rejected Ogisu's opinion regarding the length of time Koch could stand or walk, that error did not affect the RFC determination and was therefore harmless. *See Tommasetti*, 533 F.3d at 1038.

### 2.    Dexterity Limitation

The ALJ completely rejected Dr. Ogisu's opinion that Koch lacked good hand dexterity when she excluded the limitation from the RFC determination. (Tr. 159, 283.) The ALJ rejected

the opinion on the ground that Dr. Ogisu made no diagnoses or findings related to Koch's

dexterity and thus the bases for it was "not well established."  *Id.* at 284.  That finding is

supported by the record, which shows that Dr. Ogisu did not diagnose Koch's dexterity problem

nor did he or any other physician attribute it to any of Koch's other diagnosed impairments.  *Id.*

at 157-159.

Moreover, the ALJ properly relied on the lack of a diagnosis to reject Dr. Ogisu's opinion

on Koch's hand dexterity.  "[A] medical opinion offered in support of an impairment must

include symptoms and a *diagnosis*."  *Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005)

(citation omitted).  Before an ALJ can conclude that a claimant's symptoms affect the claimant's

ability to work, "medical signs or laboratory findings . . . must show the existence of a medical

impairment."  20 C.F.R. § 404.1529(b); *see also Ukolov*, 420 F.3d at 1005.  "[U]nder no

circumstances may the existence of an impairment be established on the basis of symptoms

alone."  SSR 96-4, 1996 SSR LEXIS 11, at *3 (July 2, 1996);[1] *see also* 20 C.F.R. § 404.1508.

### 3.    Duty to Develop the Record

Koch argues that the ALJ had a duty to develop the record by contacting Dr. Ogisu to

determine the basis of his opinion regarding his hand dexterity.  "An ALJ is required to recontact

a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability

determination." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Mayes v. Massanari*,

276 F.3d 453, 459-460 (9th Cir. 2001) (ALJ had no duty to develop the record where claimant

obtained a diagnosis after the hearing but the record at the time of the hearing was neither

_____

1  Courts give "some deference" to Social Security Rulings (SSRs) "as long as they are
   consistent with the Social Security Act and regulations."  *Ukolov*, 420 F.3d at 1005, n.2.  The
   Ninth Circuit has held that SSR 96-4p "is consistent with the purpose of Title II and XVI of
   the Social Security Act to provide financial assistance to those who are disabled."  *Id.*

ambiguous nor inadequate to allow for proper evaluation of the evidence); *see also Thomas*, 278 F.3d at 958 (9th Cir. 2002) (ALJ had no duty to develop the record when he disagreed with a medical report's finding that claimant could be exaggerating symptoms and still produce a valid test result ).

Here, the ALJ adequately developed the record regarding Koch's dexterity. She asked Koch about his hands at the hearing. (Tr. 498.) Koch testified that his pinkie and ring finger in his left hand are numb and that he occasionally drops things. *Id.* at 498, 502. In addition, although the ALJ indicated that she did not know quite what Ogisu meant when he said that Koch lacked good dexterity, she elicited testimony from the vocational expert on how the limitation affected the range of available jobs. *Id.* at 524-525. The vocational expert testified that work as a price marker did not require dexterity, while work as a mail sorter would require use of the hands "in a pinching sort of motion." *Id.* Thus, the ALJ had adequate information to make her disability determination. Moreover, because the ALJ found that Koch could work as a price marker, a job which does not require dexterity and exists in significant numbers, any error the ALJ made in rejecting Ogisu's opinion would not change the disability determination and was therefore harmless. *See Tommasetti*, 533 F.3d at 1038.

**B.    Limitations Identified by Doctor Dickinson**

Doctor Dickinson, a licensed clinical psychologist, examined Koch in June 2007. (Tr. 440.) Dickinson concluded that Koch's "intellectual functioning deficits and regressed adaptive social skill combine with his current medical condition in making it difficult for him to participate in conventional employment" and that he should "consider vocational training." *Id.* at 440. He also opined that Koch would need a supportive work environment. *Id.* at 429. The ALJ

rejected Dr. Dickinson's opinion on vocational training and a supportive work environment. *Id.*

at 285. Koch argues that the ALJ's rejection was in error.

The record reveals that Dr. Dickinson's opinion that Koch required a supportive work

environment and should consider vocational training is contradicted by other medical evidence.

Doctor Bates-Smith, a nonexamining state medical consultant, concluded that Koch merely

required "a routine work setting that does not require frequent or rapid adaptation." *Id.* at 204.

Thus, I review the ALJ's decision to determine whether she set forth specific and legitimate

reasons to reject Dr. Dickinson's opinion and whether those reasons are supported by substantial

evidence in the record. *See Widmark*, 454 F.3d at 1066-1067.

The ALJ rejected Dr. Dickinson's opinion on several grounds. First, she found that

Dickinson's assessment that Koch had Global Adult Function score of 57 was inconsistent with

the need for a supportive environment or vocational training.[2] (Tr. 285.) Second, she noted that

Dickinson's opinion related to vocational matters and he lacked expertise in that area. *Id.*

Finally, she noted that his opinion was not consistent with Koch's activities, including his ability

to maintain employment, to maintain a committed relationship and to purchase a mobile home.

*Id.*

An ALJ may reject a physician opinion if the ALJ correctly finds it is internally

---

2   "Clinicians use a GAF to rate the psychological, social, and occupational functioning of a
    patient." *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999). The
    clinician considers "psychological, social, and occupational functioning on a hypothetical
    continuum of mental health-illness" and assigns a score on a scale of zero to 100. *Dubie v.
    Astrue*, No. 07-3055, 2008 U.S. Dist. LEXIS 100908, at * 13-14 n.4 (D. Or. Dec. 9, 2008)
    (citing American Psychiatric Ass'n, DIAGNOSTIC AND STATISTICAL MANUAL OF
    MENTAL DISORDERS 32 (4th ed. 2000)). A GAF score between 51 and 60 indicates
    moderate symptoms (for example, flat affect, occasional panic attacks) or moderate difficulty
    in social, occupational, or school functioning (for example, few friends, conflicts with peers
    or co-workers). *Id.*

inconsistent. *Bayliss*, 427 F.3d at 1216 (ALJ properly rejected doctor's opinion that contradicted the doctor's other recorded observations and opinions regarding the claimant's capabilities). Here, while Dickinson diagnosed Koch as having a pervasive development disorder, borderline intellectual functioning and paranoid personality features, he also found that Koch had a GAF score of 57, which denotes only moderate difficulty in social or occupational functioning. (Tr. 439.) Although moderate difficulty in functioning could indicate a need for support, the evidence also rationally supports the ALJ's conclusion that a GAF of 57 was not consistent with Dickinson's opinion that Koch could not work without a supportive work environment or vocational training.

Moreover, an ALJ may discount a physician opinion based on the claimant's previous ability to hold a job while suffering from same condition that underlies his claim for disability benefits. *See Morgan,* 169 F.3d at 601; *see also Bayliss,* 427 F.3d at 1216. Here, Dickinson based his opinion in part on Koch's "history of employment and dependence upon family members or others all of this [sic] adult years," but did not have an accurate picture of Koch's employment history. (Tr. 440.) Koch did not reveal his entire work history to Dickinson. *Id.* at 489. Dickinson described Koch's employment history to include six years as an adult caretaker and "sporadic janitorial and dishwashing jobs" that altogether were "about one to two years in duration." *Id.* at 433. Koch, in fact, also worked as a full-time dishwasher for over two years and as a full-time nurse assistant for two to three years, among other jobs. *Id.* at 46-53, 256-257, 477, 479. Thus, the ALJ properly found that Dickinson's opinion was not consistent with Koch's employment activities. Accordingly, I do not disturb the ALJ's decision to give little weight to Dr. Dickinson's opinion on vocational training and the need for a supportive work environment.

Page 10 FINDINGS AND RECOMMENDATION

### C.    Limitations Identified by Doctor Bley

Koch saw Doctor Bley once, in February 2006, for treatment for low back pain.  *Id.* at 238.  Bley assessed Koch with mild degenerative disc disease, noted that Koch seemed to have a low-functioning IQ, and questioned Koch's truthfulness based on his inconsistent responses to a pinprick test.  *Id.* at 238.  In April 2006, Bley filled out a questionnaire in which he stated that he did not know if Koch would experience difficulty with stamina or pace, nor did he know Koch's maximum ability to stand, walk or sit or whether Koch could tolerate work stress.  *Id.* at 455, 457, 458.  He also indicated that he did not know if Koch was a malingerer.  *Id.* at 456.  Bley, however, also opined that Koch's symptoms would often interfere with his concentration and that Koch would miss work about twice a month.  *Id.* at 456, 460.

"The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Thomas*, 278 F.3d at 957 (ALJ properly rejected physicians' opinions regarding claimant's ability to work because the physicians changed their opinions without offering any explanation for the change); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ's finding that a physician opinion was "conclusory and unsubstantiated by relevant medical documentation" constituted a clear and convincing reason to reject the opinion).  Here, the ALJ gave little weight to Bley's opinion because Bley indicated that Koch's physical exam was not consistent with his symptoms, Bley treated Koch only once, and because Bley's opinion was "vague and inconsistent with itself regarding claimant's absences."  *Id.* at 286.  The record shows that Bley offered little or no explanation for his opinions, nor were the opinions supported by the treatment notes from his single examination of Koch.  Moreover, Bley's opinion regarding Koch's absences was inconsistent with Bley's

professed lack of knowledge concerning Koch's maximum ability to stand, walk or sit, whether Koch could tolerate work stress, or if Koch was a malingerer.  I therefore conclude that the ALJ's decision to reject Bley's opinion was both reasonable and supported by substantial evidence.

### D.    Limitations Identified by Rathbone

Koch saw Rathbone, a chiropractor, for treatment for low back pain following an auto accident in 2001.  (Tr. 143-144, 147-154.)  Koch saw Rathbone several times per month from September 2001 through February 2002, monthly from June 2003 through October 2003, and twice in 2004.  *Id.* at 142-144, 147-153, 220.  In April 2006, Rathbone filled out a questionnaire in which he opined that Koch would experience difficulty with concentration, stamina and pace and that Koch's impairment "interferes very seriously" with his ability to complete activities of daily living.  *Id.* at 457, 450.  He further indicated that Koch could lift less than 10 pounds frequently, 10 pounds occasionally and could never lift 20 pounds, and that he would miss work about twice a month.  *Id.* at 452-453.  Rathbone also indicated that Koch could sit for about four hours and stand for about two hours in an eight-hour day and would need to walk for five minutes every half hour.  *Id.* at 451.  He also, however, reported that he did not know how far Koch could walk without rest.  *Id.* at 450.

Under Social Security Act regulations, a chiropractor is not an "acceptable medical source."  *Bunnell v. Sullivan*, 912 F.2d 1149, 1152 (9th Cir. 1990) (citing 20 C.F.R. § 404.1513).  "Although a claimant is free to offer chiropractic evidence," the rules governing physician opinions do not apply to such evidence.  *See id.*  However, the same factors that apply when an ALJ weighs opinions from acceptable medical sources, including the frequency of examination and the amount of evidence that supports the opinion, also apply to opinions from other sources.

SSR 06-03p, 2006 SSR LEXIS 5, at *11 (2006).  Moreover, an ALJ may reject a physician

opinion that contradicts the doctor's own treatment record.  *Bayliss*, 427 F.3d at 1216.

       Here, the ALJ rejected Rathbone's opinion on the grounds that he was not an acceptable

medical source and because there were no treatment notes from Rathbone after April 2004, yet

Rathbone opined that Koch had been unable to work since July 2005.  (Tr. at 286.)  Prior to the

questionnaire, which included no explanation for his opinions, Rathbone's most recent statement

regarding Koch was an April 2004 letter that stated Koch's back was worsening but included no

limitations and merely stated that Koch "should be evaluated for disability."  *Id.* at 142.  Because

the record does not include any treatment records from Rathbone after April 2004, no evidence

supported Rathbone's more restrictive limitations.[3]  I therefore conclude that the ALJ properly

rejected Rathbone's opinion.

## II.    Lay Witness Testimony

       "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects

ability to work *is* competent evidence."  *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.

1996).  Thus, "an ALJ must consider lay witness testimony concerning a claimant's ability to

work." *Stout* , 454 F.3d at 1053.  The ALJ cannot disregard lay witness testimony "without

comment."  *Van Nguyen*, 100 F.3d at 1467.  Rather, if an ALJ disregards the testimony of a lay

witness, the ALJ must provide specific reasons that are germane to each witness.  *Bruce v.*

*Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

---

3  Although Koch contends that the ALJ erred in failing to request updated treatment records
   from Rathbone, on a Social Security Administration form Koch completed in May 2007,
   Koch did not list Rathbone among the doctors who had treated or examined him since August
   2004.  *Id.* at 335.  In addition, the ALJ inquired at the hearing regarding Koch's treatment and
   neither Koch nor his counsel mentioned Rathbone.  *Id.* at 484-487.  Moreover, Koch
   submitted additional medical evidence following the hearing but did not include additional
   records from Rathbone.  *Id.* at 462, 469.

The ALJ can reject lay witness testimony to the extent that it conflicts with other testimony, the record of the claimant's activity or the medical evidence. *Bayliss*, 427 F.3d at 1218; *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). Moreover, evidence from lay witnesses "must be complete and detailed enough" to allow the ALJ to determine the nature, severity and duration of the impairment and the claimant's "residual functional capacity to do work-related physical and mental activities." 20 C.F.R. § 404.1513(e).

### A.    Limitations Identified by Jeremy Koch

Jeremy Koch is the claimant's brother. In 2003, Jeremy indicated in a third-party report that Koch could pay attention for only ten minutes. (Tr. 286-287).[4] In addition, Jeremy stated that Koch could walk only 100 feet and then needed to rest for twenty minutes and indicated in a 2004 statement that Koch could walk for five minutes before needing to rest. *Id.* at 75, 286. Koch argues that the ALJ improperly rejected Jeremy's testimony regarding Koch's concentration limitations and ability to walk.

As noted above, the ALJ adequately accounted for Koch's standing and walking limitations when she indicated that Koch required the option to sit or stand. *See Cornett*, 2001 U.S. Dist. LEXIS 10933, at *35. The ALJ, however, gave little weight to Jeremy's 2003 report that Koch could only concentrate for ten minutes and had "paperwork problems" because it was

---

4  The Social Security Administration did not include Jeremy Koch's 2003 third party report in the administrative record. The Social Security Act requires that the Commissioner "file a certified copy of the transcript of the record including the evidence upon which the findings and decisions complained of are based." 42 U.S.C. § 405(g). "An adequate hearing record is indispensable because a reviewing court may consider only the Secretary's final decision, the evidence in the administrative transcript on which the decision was based, and the pleadings." *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir. 1992). When the ALJ fails in this regard, and the plaintiff is prejudiced as a result, then the interests of justice require remand. *Id.* Here, however, the ALJ described the 2003 report, and neither party objects to the ALJ's description. I conclude that its omission did not prejudice Koch and therefore does not require remand.

Page 14 FINDINGS AND RECOMMENDATION

inconsistent with his other statements that Koch could use a checkbook, pay bills and handle a savings account. *Id.* at 287. The ALJ could rationally conclude that Jeremy's report that Koch had problems with concentration and paperwork was inconsistent with his report that Koch managed his personal finances. I accordingly find that the ALJ properly discounted that portion of Jeremy's opinion.

### B.    Limitations Identified by Brett Croskrey

Brett Croskrey is Koch's friend. Croskrey wrote an undated letter, submitted a witness statement in 2007, and testified at the remand hearing on Koch's behalf. (Tr. 108, 397-403, 506-509.) Croskrey's testimony indicated that Koch appeared to be in pain, had problems walking, including shortness of breath, and could not lift boxes over thirty pounds. *Id.* at 506-509. Croskrey also testified that Koch was reliable approximately eighty percent of the time, could work only ten minutes without needing rest and maintained a pace that was roughly sixty percent of normal. *Id.* at 507-509. Koch argues that the ALJ improperly rejected this testimony.

As noted above, the ALJ adequately accounted for Koch's standing and walking limitations when she indicated that Koch required the option to sit or stand. Because Croskrey testified that Koch appeared to be in pain when walking, the ALJ's decision to include a sit/stand option in the RFC also accounted for Croskrey's statement that Koch appeared to be in pain. *Id.* at 508. In addition, the ALJ accounted for Croskrey's statement concerning Koch's inability to lift thirty pounds when she limited Koch to lifting twenty pounds occasionally. *Id.* at 283.

Moreover, the ALJ properly gave "some weight" to Croskrey's testimony concerning Koch's reliability, pace and need to rest. *Id.* at 287. The ALJ discounted that testimony because Croskrey did not see Koch very often. *Id.* That reasoning is supported by substantial evidence

Page 15 FINDINGS AND RECOMMENDATION

in the record.  Croskrey testified that he saw Koch about once per month, when Koch came in to

pick up cans and bottles, but Koch sometimes did not come because he did not have enough gas

money.  *Id.* at 510.  Thus, Croskrey's testimony regarding Koch's reliability might arise from

Koch's inability to obtain gas money rather than his impairments.  In addition, Croskrey's

testimony about Koch's pace and need to rest was based on Koch's performance when, in 2005,

he helped Croskrey move from his house and carried items such as lamps and silverware boxes.

*Id.* at 508-509.  The ALJ could rationally conclude that limiting Koch to lifting twenty pounds

only occasionally and to jobs that have an option to sit or stand adequately accounted for Koch's

limitations as Croskey described them.  I therefore find that the ALJ properly considered

Croskrey's testimony.

### C.    Limitations Identified by Lonnie Stephens

Lonnie Stephens is Koch's friend.  *Id.* at 248.  Stephens wrote a letter in 2006, submitted

a witness statement in 2007, and testified at the remand hearing on Koch's behalf.  (Tr. 248, 412-

419, 511-516.)  Stephens indicated that Koch appeared to be in "moderate to substantial back

pain," or "intense back pain" and appeared to have difficulty walking after sitting for an hour or

more.  *Id.* at 248, 417, 514.  He also indicated that Koch had acceptable hygiene and got along

with others, but stated that Koch was childlike, violated personal space and did not communicate

clearly because he repeated himself.  *Id.* at 248, 515.  Stephens further testified that Koch did not

function as fast as others mentally, that his attention and concentration were "lacking," but he

had an "excellent memory for most things."  *Id.* at 515.  Finally, he testified that Koch suffered

from    incontinence.  *Id.* at 516.  Koch argues that the ALJ improperly rejected this testimony.

The ALJ stated that she gave "little weight" to the evidence concerning Koch's back pain

that Stephens set forth in his 2006 letter and 2007 statement because the statements were "vague" and included "little information." *Id.* at 287. The ALJ's reasons are supported by the record, as Stephens' letter and statement did not describe any functional limitations related to his back pain. *Id.* at 248, 417; *see also* 20 C.F.R. § 404.1513(e) (evidence from lay witnesses "must be complete and detailed enough" to allow the ALJ to determine the claimant's residual functional capacity). Moreover, as noted, the ALJ adequately accounted for Koch's standing and walking limitations when she indicated that Koch required the option to sit or stand.

The ALJ did not reject Stephens' hearing testimony concerning Koch's social and communication skills and his view that Koch's attention and concentration "was lacking," but rather gave that opinion "some weight." Tr. at 287. The ALJ discounted Stephens' opinion because he did not see Koch that often. *Id.* at 288. The record demonstrates that Stephens formerly saw Koch weekly, but in the year prior to the hearing, he saw Koch approximately once per month for an hour. *Id.* at 511-512. In addition, the record shows that, in addition to Stephens' statements, the ALJ considered and relied on medical assessments of Koch's mental and social abilities in reaching her RFC determination. *Id.* at 284-286. I therefore conclude that the ALJ did not err in affording only some weight to Stephens' testimony regarding Koch's mental and social limitations.

Finally, although the ALJ did not specifically discuss Stephens' testimony about Koch's incontinence, she nonetheless found that Koch would need "easy access to a restroom." *Id.* at 283. Thus, the ALJ did not reject Stephens' testimony to the extent that the requirement that Koch have easy restroom access sufficiently accounted for Koch's incontinence. I discuss that issue further below.

**D.    Limitations Identified by Iris Koch**

Iris Koch is Koch's stepmother.  *Id.* at 404.  Iris submitted two witness statements in support of Koch's claim, one in February 2007 and another in August 2007.  *Id.* at 320-326; 404-410.  Iris' statements indicated that Koch had problems with bowel incontinence "often several times a week," that his back appeared to be getting worse, and that he had numbness in one hand and was clumsy with tools.  *Id.* at 321, 325, 326, 406.  She also stated that Koch was "functionally illiterate" and appeared to be dyslexic and that he invaded personal space and lacked awareness of socially appropriate boundaries of behavior.  *Id.* at 322, 324, 408.  She further indicated that he was "fired from every job he ever had for no good reason, except his learning deficits."  *Id.* at 324, 408.  She noted, however, that Koch was able to access community resources such as food stamps and assistance in paying his electricity bill. *Id.* at 323, 407.  Koch argues that the ALJ improperly rejected Iris' statements concerning his limitations.

The ALJ gave "some weight" to Iris' statements, but discounted them due to inconsistencies between her account of the reasons Koch left jobs and other evidence in the record.  *Id.* at 288.  The record reflects that Koch testified that he was fired from his job as a dishwasher due to a conflict with his manager and that he was asked to resign from a job as a nurse assistant due to (unfounded) allegations of misconduct.  *Id.* at 477-478, 480.  I therefore conclude that the ALJ properly discounted Iris' statements.  *See Lewis*, 236 F.3d at 512 (ALJ properly discounted lay witness testimony based on inconsistent evidence)

**E.    Limitations Identified by Laura Chambers**

Laura Chambers is Koch's mother.  In February 2007, Chambers submitted a witness statement in support of Koch's claim.  (Tr. 327-333.)  Chambers indicated that Koch was

outgoing, able to look after himself, including cooking, cleaning and laundry, and that Koch

could follow directions but "tend[ed] to do things his own way." *Id.* at 328-329. She also,

however, stated that he had problems following directions, sometimes interrupted others or

engaged in inappropriate conversation, and did not know how to access community resources.

*Id.* at 328-330. She further indicated that his back problems were "causing a lot of pain and

making it impossible to work." *Id.* at 332. Koch argues that the ALJ improperly rejected

Chambers' statements.

    Although an ALJ may not discredit lay witness testimony solely because the claimant

was not credible, *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), the ALJ may properly

reject testimony on the grounds that it is inconsistent with other evidence in the record. *Vincent*

*v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984). Here, the ALJ gave "some weight" to

Chambers' statements, but discounted them due to inconsistencies, because they were based on

Koch's subjective complaints and because Chambers was not qualified to give vocational

opinions. (Tr. 288.) The record reflects that Iris Koch indicated that Koch was able to access

resources and Chambers stated that he could not. *Id.* at 323, 330, 407. In addition, the ALJ

could rationally conclude that Chambers' description of Koch's ability to cook, clean and do

laundry was inconsistent with her statement that it was impossible for him to do work. Thus, the

ALJ's finding of inconsistency is rational, supported by substantial evidence and germane to the

witness. I therefore conclude that the ALJ properly discounted Chambers' testimony.

III.    **Claimant Credibility**

    Once a claimant produces medical evidence of an underlying impairment, an ALJ may

not reject the claimant's subjective complaints based solely on a lack of medical evidence to fully

corroborate the alleged severity of pain. *Robbins v. Soc. Sec. Admin*. 466 F.3d 880, 883 (9th Cir.

2006).  Unless the record has affirmative evidence of malingering, the ALJ can reject the

claimant's testimony about the severity of his symptoms only by offering specific, clear and

convincing reasons for doing so. *Carmickle,* 533 F.3d at 1160.  The ALJ must state specifically

which symptom testimony is not credible and what facts in the record lead to that conclusion.

*Vasquez v. Astrue*, 547 F.3d 1101, 1105 (9th Cir. 2008) (ALJ improperly rejected claimant's

testimony based solely on the discrepancies between the claimant's assertions and the

information in the reports of the treating and examining physicians without making specific

findings); *Robbins*, 466 F.3d at 884-885 (ALJ improperly rejected claimant's testimony when he

provided no "meaningful explanation" or citation to the record to support his finding that it was

"equivocal" and not supported by the medical evidence); *Lester v. Chater*, 81 F.3d 821, 834 (9th

Cir. 1995) (ALJ improperly rejected claimant's testimony as not credible when she failed to

provide any specific reasons for her disbelief other than a lack of objective evidence).  In other

words, the ALJ's credibility findings must be sufficiently specific to "permit the court to

conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Tommasetti*, 533

F.3d at 1039 (citation omitted); *see also* SSR 96-7; 1996 SSR LEXIS 4, at *12 (July 2, 1996).

Here, the ALJ found that Koch produced objective medical evidence of degenerative disc

disease, leg length discrepancy, asthma, borderline intellectual functioning and irritable bowel

syndrome.  (Tr. 281-282.)  In addition, neither the ALJ's nor my review of the record shows

affirmatively that Koch was malingering.  Thus, the ALJ was required to set forth "clear and

convincing" reasons to reject Koch's testimony.  Koch argues that the ALJ's rejection of his

testimony did not meet that standard.

The ALJ concluded that Koch's testimony concerning the intensity, persistence and limiting effects of his symptoms was not credible to the extent that it conflicted with the ALJ's residual functional capacity assessment. *Id.* at 284. As noted above, the ALJ accounted for Koch's testimony regarding his limited ability to sit, stand and walk by restricting him to jobs that provided the option to sit or stand. *Id.* In addition, the ALJ incorporated Koch's testimony that he could not do decimals or fractions very well by limiting him to jobs that required minimal math.[5] *Id.* The ALJ, however, rejected Koch's testimony that he has not been able to lift anything since 2001 and that he suffers from chronic diarrhea that occurs five times per day. *Id.*

The ALJ explained that she rejected Koch's testimony "for the reasons stated below" and then proceeded to assess the conflicting medical evidence, lay witness testimony and to note Koch's other testimony at the hearing. *Id.* at 284-289. In that assessment, the ALJ referred to evidence apparently relevant to her credibility finding. I therefore conclude that, while this is a close issue because the ALJ should have been more explicit, the ALJ's analysis is sufficiently specific to allow me to determine whether the she arbitrarily discredited Koch's testimony. Accordingly, I now determine whether the evidence that ALJ cited provided convincing reasons to reject Koch's testimony.

### A.    Medical Evidence

Although an ALJ may not reject a claimant's symptom testimony based solely on a lack of medical evidence, an ALJ may consider the medical evidence as one of many factors relevant to determining the severity of the claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). Here, the ALJ noted that

---

5  Although the ALJ wrote that Koch testified that he could not do decimals or fractions, Koch actually replied "not very well" when the ALJ inquired regarding his ability to do fractions and decimals. *Id.* at 499.

Dr. Friedman, who Koch saw for a neurological exam, "could not find a likely cause" for Koch's discomfort.  (Tr. 286, 463.)  She further noted that an MRI revealed minimal disk degeneration and annulus bulging and that a 2007 exam revealed mild paraspinal tenderness and a stable gait with no sciatica or pedal edema.  *Id.* at 286, 443, 468.  Although the ALJ could not rely on the lack of objective medical evidence alone, she properly noted the medical evidence as a reason to reject Koch's testimony concerning his lifting limitations.  I note however, that the ALJ's RFC determination did not include a review of the medical record concerning Koch's irritable bowl syndrome with symptoms of chronic diarrhea and bowel incontinence.

### B.    Daily Activities

"The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits and many home activities are not easily transferable to what may be the more grueling environment of the workplace."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (citations omitted).  Rather, a claimant's daily activities may support an adverse credibility finding where the "claimant engages in numerous daily activities involving skills that could be transferred to the workplace" or where the activities are inconsistent with claimant's alleged symptoms.  *Orn*, 495 F.3d at 639.  Thus, in *Burch v. Barnhart*, the Ninth Circuit concluded that the ALJ properly relied on the claimant's ability to care for her personal needs, cook, clean, shop, interact with her boyfriend and manage her own finances as a reason to partially reject the claimant's pain testimony.  400 F.3d 676, 680-681 (9th Cir. 2005).

Here, the ALJ referred to Koch's activities in her RFC analysis.  She accurately noted that Koch indicated that he dressed on his own, did his laundry, shopped for groceries and could balance a checkbook.  *Id.* at 285, 288, 289, 488, 490-491, 494.  Moreover, although Koch's

testimony may have overstated his abilities,[6] the ALJ also relied on lay witness testimony

concerning Koch's daily activities. *Id.* at 287-288. Lay witness testimony from Jeremy Koch,

Iris Koch and Laura Chambers indicated that Koch could prepare meals and do laundry, among

other activities. *Id.* at 71-73, 321-322, 328-329. The ALJ did not reject the opinions of these

witnesses but rather gave them some weight. *Id.* at 287-288.

The ALJ's reliance on Koch's daily activities, however, is insufficient to reject Koch's

irritable bowel syndrome symptom testimony. The ALJ could rationally conclude that Koch's

ability to shop for groceries or do laundry was inconsistent with Koch's statement that he was

unable to lift anything since his injury in an auto accident in 2001. Koch's activities, however,

are not inconsistent with his testimony regarding his irritable bowel symptoms, which included

bowel incontinence and chronic diarrhea that required extended use of the bathroom several

times per day. Outside a workplace setting, Koch could perform daily activities and still stop to

change his clothes or take extended bathroom breaks. I therefore conclude that Koch's daily

activities were not a convincing reason to reject his testimony regarding his irritable bowel

symptoms.

### C.    Receipt of Unemployment Income

The ALJ accurately noted that Koch reported that he had received unemployment income

in April 2004 but alleged a disability onset date of May 2003. *Id.* at 161, 285. The record,

however, does not establish whether Koch held himself out as available for full-time or part-time

work. Only the former is inconsistent with Koch's allegation of disability. *See Carmickle*, 533

F.3d at 1161-1162. Thus, the ALJ's reliance on Koch's receipt of unemployment was in error.

---

6  Doctor Dickinson noted that Koch demonstrated "magical thinking" regarding his ability to
   complete daily activities and testing indicated that Koch tried to present himself favorably and
   was unwilling to admit even minor flaws. (Tr. 435, 438.)

In sum, while the ALJ properly discounted Koch's testimony regarding his lifting limitations, she did not provide any clear and convincing reasons to reject his testimony regarding his irritable bowel syndrome symptoms.  The ALJ rationally concluded that Koch's daily activities were inconsistent with his stated inability to lift objects.  However, neither Koch's daily activities nor his receipt of unemployment income were convincing reasons to reject his testimony regarding chronic diarrhea and bowel incontinence.[7]  The ALJ's error in failing to credit that testimony is harmless, however, if the ALJ's properly accounted for his limitations in her RFC finding.  I discuss that issue further below.

## IV.   Determination Regarding Listed Impairment

The Listing of Impairments describes impairments that the Commissioner considers "to be severe enough to prevent an individual from doing any gainful activity," regardless of age, education or work experience.  20 C.F.R. § 404.1525(a).  Thus, a claimant is disabled if his or her impairment meets or equals a listed impairment.  20 C.F.R. § 404.1520(a)(4)(iii).  An impairment meets a listed impairment, if the claimant establishes that he or she meets each characteristic of the listed impairment.  *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  An impairment equals a listed impairment if the claimant establishes symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of the listed impairment.  *Id.*  If a claimant suffers from multiple impairments, no one of which meets or equals a listed impairment, the ALJ must evaluate whether the combination of impairments

---

7  Koch told Dr. Ogisu that he did not suffer from bowel or bladder dysfunction and told a treating physician, who he saw once for an ER visit, that he did not suffer from bowel or bladder incontinence.  The ALJ did not cite these discrepan as a basis for her adverse credibility finding.  As a result, they cannot serve as a basis to uphold that finding.  *Stout*, 454 F.3d at 1054 ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision.")

Page 24 FINDINGS AND RECOMMENDATION

medically equals a listed impairment.  20 C.F.R. § 404.1523.

Here, Koch contends that the ALJ erred by failing to find that his borderline intellectual functioning equaled listed impairment 12.05(C) Mental Retardation.  20 C.F.R. pt. 404, subpt. P, App. 1.  That listing requires that Koch establish that he met or equaled the following characteristics: "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  *Id.*  Koch argues that the ALJ failed to consider lay witness testimony that established deficits in his adaptive behavior sufficient to show his borderline intellectual functioning met listing 12.05(C).

The ALJ found that the evidence failed to establish the presence of "paragraph C" criteria.  (Tr. 283.)  That finding is supported by substantial evidence in the record.  While several lay witnesses indicated that Koch had problems with social interaction, including violating personal space, interrupting others and not communicating clearly, the ALJ considered that testimony in conjunction with the medical evidence.  Koch's lowest IQ score was 74, above the score required to find Koch mentally retarded under 12.05(C).[8]  *Id.* at 165, 436.  In addition, the doctors who assessed Koch's IQ noted Koch's adaptive behavior, including his ability to cook for himself, maintain personal hygiene, clean his home and manage his finances, and diagnosed him with borderline intellectual functions, not mental retardation.  *Id.* at 167-168, 435, 439.  Although Dr. Dickinson noted that Koch likely had some difficulty with cooking and stocking groceries, he nonetheless concluded that Koch's "actual full score intellectual functioning was between 73-82."  *Id.* at 435-436.  Therefore, I conclude that the ALJ did not err in finding that

---

8  Section 12.00(D) of the Appendix provides that "[i]n cases where more than one IQ is customarily derived from the test administered . . . we use the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D).

Koch's mental limitation did not meet the listing 12.05(C) criteria.

**V.     Residual Functional Capacity Assessment and Step Five Determination**

The RFC assessment describes the work-related activities a claimant can still do on a sustained, regular and continuing basis, despite the functional limitations imposed by his impairments.  20 C.F.R. § 404.1545(e); SSR 96-8p, 1996 SSR LEXIS 5, at *5 (July 2, 1996). The ALJ must reach the RFC assessment based on all the relevant evidence in the case record including medical records and the effects of symptoms that are reasonably attributed to a medically determinable impairment.  *Robbins,* 466 F.3d at 883; SSR 96-8p, 1996 SSR LEXIS 5, at *14.  The ALJ, however, need not incorporate limitations identified through testimony that the ALJ permissibly discounted.  *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

In step five, the Commissioner must show that the claimant can do other work that exists in the national economy.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  The Commissioner can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant.  *Id.*  The hypothetical posed to a vocational expert must only include those limitations supported by substantial evidence.  *Robbins*, 466 F.3d at 886.  "Conversely, an ALJ is not free to disregard properly supported limitations."  *Id.*

Here, although Koch argues that the RFC failed to capture his hand dexterity limitation and his borderline intellectual functioning as manifested by his performance in various mental tests conducted by Dr. Dickinson, the ALJ properly rejected the opinions that established those limitations, as explained above.  His hand dexterity problem was not supported by a medical

diagnosis and the ALJ adequately developed the record regarding it.  Moreover, although Dr.

Dickinson's notes indicate that Koch suffered from various problems in completing the mental

examination, the only work-related mental restrictions he included were the need for vocational

training or a supportive work environment.  The ALJ properly rejected that opinion and

therefore, in reaching the RFC determination, had no need to incorporate the specific results of

the various mental tests that led to that conclusion.  Moreover, the RFC adequately captured

Dickinson's observation that Koch had problems speaking articulately and would need assistance

in making some phone calls because it limited Koch to work with occasional contact with the

public.  *Id.* at 283.  I address Koch's remaining arguments concerning the RFC assessment and

step five determination in the sections that follow.

> A.      **Mental Limitations**

Koch argues that the ALJ's RFC determination failed to fully account for his mental

deficits.  He argues that the ALJ failed to address the opinion of Dr. Bates-Smith, the

nonexamining state medical consultant, that he suffered from moderate limitations in

concentration, persistence or pace, moderate limitations in responding to changes in the work

setting and that he required "routine work without frequent or rapid adaptation."

> 1.      **Limitations in Concentration, Persistence or Pace**

"[A]n ALJ's assessment of a claimant adequately captures restrictions related to

concentration, persistence or pace where the assessment is consistent with restrictions identified

in the medical testimony."  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008);

*Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997) (holding that limitation to "simple routine

repetitive work, which does not require close attention to detail" and at a "regular pace" captured

deficiencies of concentration, persistence or pace); *Davis v. Massanari*, No. 00-6211, 2001 U.S. Dist. LEXIS 12516, at *23-26 (Aug. 15, 2001) (holding words used in the Psychiatric Review Technique Form need not be used in the vocational hypothetical as long as the question captures the findings from the form). Thus, in *Stubbs-Danielson*, the ALJ properly found the claimant could perform "simple tasks" where the reviewing psychologist recommended that restriction and the medical evidence showed the claimant could carry out simple instructions, maintain concentration and sustain a routine despite moderate limitations in maintaining pace. 539 F.3d at 1173-74; *see also Nguyen*, 100 F.3d at 1466 n.3 (suggesting that limitation to "simple one-two-three jobs" could sufficiently capture problems with concentration).[9]

Here, the ALJ's decision to limit Koch to simple, routine tasks was consistent with restrictions identified in the medical testimony. Although Dr. Bates-Smith noted in the Psychiatric Review Technique Form that Koch suffered moderate problems in concentration persistence or pace (Tr. 195), the other medical evidence specifically indicated that he had problems with complex instructions – not with keeping pace. Doctor Brichetto found that Koch

---

9  In several of the cases Koch relies on, the ALJ's decision to limit a claimant to simple tasks or unskilled work did not adequately capture that the claimant often suffered from deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. *Abrego v. Comm'r Soc. Sec. Admin.,* No. 99-6173, 2000 U.S. Dist. LEXIS 8900, at *5 (D. Or., May 25, 2000); *Moore v. Apfel*, No. 98-6367, 2000 U.S. Dist. LEXIS 5813, at *25 (D. Or. Apr. 14, 2000) *rev'd on other grounds by* 278 F.3d 920 (9th Cir. 2002); *Dade v. Comm'r Soc. Sec. Admin*, No. 99-6032, 1999 U.S. Dist. LEXIS 19944, at *9-10 (D. Or. Dec. 15, 1999); *Kirwan v. Apfel*, No. 98-6366, 1999 U.S. Dist. LEXIS 16471, at *12-13 (D. Or. Oct. 21, 1999); *McGuire v. Apfel*, No. 98-1302, 1999 U.S. Dist. LEXIS 9381, at *40 (D. Or. May 11, 1999). In the others, the ALJ failed to include any reference to the claimant's mental limitation. *Renfro v. Comm'r Soc. Sec. Admin.*, No. 98-6355, 1999 U.S. Dist. LEXIS 17007, at *13-14 (D. Or. Oct. 26, 1999) (ALJ failed to include moderate limitations in contact with the public); *Thomczek v. Chater*, No. 94-74011, 1996 U.S. Dist. LEXIS 947, at *5 (E.D. Mich. Jan. 5, 1996). I find these cases unpersuasive because here, the medical evidence showed that Koch had problems with complex instructions, not pace, and thus the ALJ's decision to limit Koch to simple tasks adequately captured his limitation.

was able to focus during the session but had problems with complex step commands or detailed instructions. *Id.* at 167. Bates-Smith's Mental Residual Capacity Assessment, which assesses an individual's capacity to sustain activity over a  workday, found that Koch was moderately limited in his ability to understand, remember and carry out detailed instructions, but was not limited in his ability to carry out simple instructions, concentrate and perform activities within a schedule. *Id.* at 201-202. Doctor Bates-Smith further explained that Koch's work history and activities of daily living showed that Koch could understand and remember simple, three-step instructions. *Id.* at 203. Thus, I conclude that the ALJ's decision to limit Koch to simple, routine tasks adequately captured his limitation.

### 2.    Limitations in Ability to Respond to Changes in the Work Setting

The ALJ also properly accounted for Koch's limitations in responding to changes in the work setting. Doctor Bates-Smith's Mental Residual Capacity Assessment found that Koch was moderately limited in his ability to respond appropriately to changes in the work setting. *Id.* at 201-202. She further explained that he required a "routine work setting that does not require frequent or rapid adaptation." *Id.* at. 204. Although the RFC finding in the ALJ opinion only limited Koch to "routine tasks," at the hearing, she asked the vocational expert to identify jobs that did not require frequent or rapid adaptation. *Id.* at 283, 522. The vocational expert testified that work as a price marker or a mail sorter met that requirement. *Id.* at 522-523. Thus, even if "routine tasks" does not adequately capture the inability to perform jobs that require frequent and rapid adaptation, the ALJ's error in that regard was harmless because the ALJ took that limitation into account when she found that Koch could work as a price marker or mail sorter.

Page 29 FINDINGS AND RECOMMENDATION

**B.     Deviation from the Dictionary of Occupational Titles**

Although evidence provided by a vocational expert generally should be consistent with

the *Dictionary of Occupational Titles*, neither source automatically prevails when there is a

conflict. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). The ALJ must first

determine whether a conflict exists. *Id.* If a conflict exists, "the ALJ must then determine

whether the vocational expert's explanation for the conflict is reasonable and whether a basis

exists for relying on the expert rather than the *Dictionary of Occupational Titles*." *Id.; see also*

*Johnson*, 60 F.3d. at 1435 ("[A]n ALJ may rely on expert testimony which contradicts the DOT,

but only insofar as the record contains persuasive evidence to support the deviation.").

Here, the ALJ asked the vocational expert to indicate whether her testimony was

consistent with the DOT. (Tr. 521.) The vocational expert did not identify any conflicts and

testified that work as a price marker or a mail sorter involved minimal writing and math and did

not require frequent or rapid adaptation. *Id.* at 522-523. Koch, however, argues that the

vocational expert deviated from the DOT because work as a price marker or mail sorter requires

reasoning skills beyond those needed for simple tasks. I therefore must determine whether a

conflict exists between the DOT and the vocational expert's testimony.

The DOT indicates that the price marker job requires a specific vocational preparation

(SVP) score of two, which indicates that it takes beyond a short demonstration up to and

including one month for a worker to learn the job duties. DOT, App. C § II. Under the Social

Security regulations, an SVP of two equates to unskilled work, defined as "work which needs

little or no judgment to do simple duties that can be learned on the job in a short period of time."

20 C.F.R. 404.1568(a); SSR No. 00-4p, 2000 SSR LEXIS 8, at *7-8 (Dec. 4, 2000). The DOT

Page 30 FINDINGS AND RECOMMENDATION

also indicates, however, that a price marker requires a reasoning level of two.  DOT § 209.587-034.  Level two reasoning requires that the person "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions," and "[d]eal with problems involving a few concrete variables in or from standardized situations."  An SVP level focuses on the amount of time it takes to learn job duties, while a reasoning level focuses more directly on the job's simplicity.  *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984.  (C.D. Cal. 2005).   Thus, I look to the reasoning level, not the SVP, to determine whether the vocational expert testimony contradicted the DOT.

Level two reasoning is consistent with an ability to perform only simple, routine tasks. Because the DOT ranks reasoning on a six-point scale, level two reasoning describes someone with who can do more than the "most elementary of occupations" that require "only the slightest bit of rote reasoning." *Id.*  Thus, someone who is able to perform even simple instructions meets level two reasoning.  *Id.*; *see also Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (noting that "level-two reasoning appears more consistent" with the claimant's limitation to "simple and routine work tasks"); *Riggs v. Astrue*, No. 07-5242, 2008 U.S. Dist. LEXIS 92922, at *54-55 (W.D. Wash. Mar. 31, 2008) (finding that level two reasoning is consistent with the claimant's limitation "to understanding, remembering and carrying out simple instructions").  I therefore conclude that the vocational expert's testimony that Koch could work as a price marker did not contradict the DOT description for that job title.

Moreover, even if the vocational expert testimony did contradict the DOT, "the record contains persuasive evidence to support the deviation." *Johnson*, 60 F3d. at 1435.  As discussed above, the medical evidence indicated that Koch had problems with complex step commands or

Page 31 FINDINGS AND RECOMMENDATION

detailed instructions but he could understand and remember simple, three-step instructions. Moreover, his work history include several years working as a caregiver, or home attendant, which requires level three reasoning, DOT § 354.377-014, and as a janitor, which requires level two reasoning, DOT § 381.687-018.  (Tr. 518.)

The mail sorter job requires a reasoning level of three.  DOT § 209.687-026.  I do not, however, address whether the vocational expert testimony conflicted with the DOT description of that job title.  Even if the ALJ erred in relying on the vocational expert's testimony that Koch could perform the duties of a mail clerk, such error was harmless because the ALJ's finding that Koch could perform work as a price marker adequately supports her adverse disability finding.

### C.    Limitations Caused by Irritable Bowel Syndrome Symptoms

The ALJ failed to fully account for the limitations posed by Koch's chronic diarrhea and bowel incontinence.  Koch testified at the remand hearing that he suffered from chronic diarrhea and that he had to change his clothes twice a day when having problems with incontinence.  *Id.* at 482.  He also testified that he was in the bathroom for an hour and a half to two hours a day and changed his underwear three or four times per day.  *Id.* at 496.  He testified at his 2004 hearing that he suffered from incontinence at least once per week.  *Id.* at 262.[10]  The ALJ, however, merely limited Koch to jobs that allowed easy access to a restroom.  *Id.* at 283.  That limitation fails to account for the frequent and lengthy trips to the restroom that Koch described in his testimony.

Because the ALJ did not provide clear and convincing reasons for excluding Koch's

---

10 Koch told Dr. Ogisu that he did not suffer from bowel or bladder dysfunction and told a treating physician, who he saw once for an ER visit, that he did not suffer from bowel or bladder incontinence.  *Id.* at 157, 183.  As noted above, however, Dr. Dickinson found that Koch was unwilling to admit even minor flaws.  *Id.* at 438.  In addition, two lay witnesses corroborated that Koch suffered from bowel incontinence.  (Tr. 321, 516.

Page 32 FINDINGS AND RECOMMENDATION

testimony on the extent of his irritable bowel symptoms from her assessment of Koch's RFC, substantial evidence does not support her assessment. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). Moreover, substantial evidence does not support the ALJ's step five determination, since it was based on the ALJ's erroneous RFC assessment. *Id.* The vocational expert testified that a need to use the bathroom for one to two hours per day would preclude employment, as would any drop in productivity of 10 percent or more. (Tr. 529.) Thus, the vocational expert's testimony establishes that taking Koch's testimony as true, he was disabled. *See Lingenfelter*, 504 F.3d at 1040.

## VI.    Remand for Award of Benefits

The district court should credit evidence that was rejected during the administrative process and remand for an award of benefits if: (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) no outstanding issues remain for the ALJ to resolve; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citation omitted). Here, as noted above, the ALJ failed to provide legally sufficient reasons to reject Koch's irritable bowel symptom testimony and it is clear from the vocational expert testimony that the ALJ would be required to find Koch disabled if she properly credited that evidence. Thus, I must address whether there are outstanding issues for the ALJ to resolve on remand.

In one line of cases, the Ninth Circuit has indicated that a court will not remand solely to allow an ALJ to make specific findings regarding a claimant's improperly discredited testimony. *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1998); *see also Lester*, 81 F.3d at 834. In *Connett v. Barnhart*, however, the Ninth Circuit noted the credit-as-true

doctrine is not mandatory, and courts have "some flexibility" in applying it if substantial

questions remain as to the claimant's credibility. 340 F.3d 871, 876 (9th Cir. 2003). Moreover,

in *Vasquez*, the Ninth Circuit noted but declined to resolve the conflict between *Varney* and

*Lester* on the one hand and *Connett* on the other. 547 F.3d 1101, 1107 (9th Cir. 2008).

Assuming, without deciding, that the court has flexibility in applying the credit-as-true

rule, I note that, unlike in *Connett*, the record here does not show substantial issues regarding the

claimant's credibility. Although the record shows that Koch twice denied bowel incontinence,

his incontinence was corroborated by lay witness testimony. (Tr. 321, 516.) Moreover, as noted

above, Dr. Dickinson found that Koch was unwilling to admit even minor flaws.

In sum, I conclude that the ALJ did not provide clear and convincing reasons to reject

Koch's irritable bowel symptom testimony. Moreover, no outstanding issues remain regarding

that testimony in light of the evidence in the record as a whole. Further, because the vocational

expert testified that Koch's frequent need for extended bathroom breaks would eliminate any

potential employment, further proceedings are unnecessary. Accordingly, the court should

reverse the judgment of the ALJ and remand for the calculation and award of benefits

## CONCLUSION

Based on the foregoing, the ALJ's decision to deny Koch benefits was not supported by

substantial evidence in the record. The court should therefore reverse the Commissioner's

decision and remand for an award of benefits.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District

Judge for review. Objections, if any, are due June 4, 2009. If no objections are filed, review of

the Findings and Recommendation will go under advisement on that date.  If objections are filed,

a response to the objections is due within 10 days after being served with a copy of the

objections. When the response is due or filed, whichever date is earlier, the Findings and

Recommendation(s) will be referred to a district court judge and go under advisement.


      Dated this 21st day of May, 2009.

                             /s/ Paul Papak
                            Honorable Paul Papak
                            United States Magistrate Judge